obtain the six months of data needed for the accelerated next steps with the FDA. There was no new batch or higher-dose of ACP-501 provided to Mr. Ward, as they had promised.

58.    From July to September 2013, Mr. Ward flew from Boston to Washington, D.C. every other Tuesday to check into a hospital room at NIH. Each Wednesday morning Dr. Shamburek administered the lower dose of ACP-501 and drew blood from Mr. Ward six times, during a twelve-hour period from 8:00 a.m. to 8:00 p.m. Each Thursday, Mr. Ward was again confined to his room the entire day, with six more blood draws. He flew back to Boston every other Friday.

59.    Predictably, Mr. Ward's kidney function deteriorated on the lower dose to the point that his nephrologist in Massachusetts ordered him placed him on dialysis. After several more low-dose ACP-501 treatments, Mr. Ward and Dr. Schaefer, the referring physician, decided to discontinue the lower dose as not worth Mr. Ward's time, effort, and ordeal, and because it interfered with now even more critical dialysis.

60.    Dr. Shamburek was persistent in the face of Mr. Ward's decision to terminate. He left a voicemail for Mr. Ward, saying he had "interesting new information" for Dr. Schaefer and him that had not been previously communicated. Dr. Shamburek tried to convince Mr. Ward that the lower dose of ACP-501 was actually working to improve kidney function, and that it was the optimal dose.

61.    Finally, in or about September 2013, Dr. Schaefer advised that Mr. Ward stop participating in the experimentation, and Mr. Ward dropped out of the study. In October 2013, Dr. Shamburek left a voicemail marked "urgent" on Mr.

Ward's phone, in which Dr. Shamburek yelled, "You can't just leave the program! If you try to leave the program, then you will be required to file a lot of paperwork. You have to come back to the NIH!" A year later, in September 2014, Mr. Ward first heard that ACP had been sold for $20,000,000.00 to AstraZeneca's MedImmune unit in 2013, based principally on the extensive data derived from his rare blood as ACP-501 was processed in his body. Mr. Ward was shocked and felt used, deceived, and betrayed.

62. At some point after the completion of the experimentation, Dr. Remaley published a paper for the Lipoprotein Metabolism Section of the Cardiopulmonary Branch of the NIH, titled "HDL Review: Translating new findings on LCAT into novel therapies." The slide deck provided a summary of the relevant biological science, the pre-clinical findings from animal models, the "Phase 1" single injection of rhLCAT findings, and the findings associated with the experimentation on Mr. Ward, including:

> a. "One rLCAT treatment every two weeks significantly raised HDL-C above baseline and maintained cholesterol esters above threshold which should prevent LpX formation;"
> b. "rLCAT treatment appeared to modestly improve renal function;"
> c. "rLCAT ... significantly improves anemia by decreasing cholesterol content on RBCs"; and
> d. "No serious adverse events."

63. From January 2014 to March 2015, Dr. Schaefer "employed" Mr. Ward to meet once a month at a salary of $500 per month, for a period of one to three hours. Mr. Ward did not have specific duties, but he and Dr. Schaefer would often have lunch, discuss Ed's private life, emotions, hobbies, reading, and the experimentation and its adverse effects. Dr. Schaefer discussed his attempts to

publish a paper on how ACP-501 raised Mr. Ward's HDL ten fold. Mr. Ward stopped appearing after March 2015, but the monthly checks continued until September 2015.

64. Later, in March 2016, Dr. Schaefer admitted to Mr. Ward in a letter that possible ACP-501 treatment for the reversal of kidney decline was five years away, a revelation never before disclosed to Mr. Ward. Dr. Schaefer also wrote that, if Mr. Ward brought suit against Alpha Core, he would testify against Mr. Ward.

65. Mr. Ward had suffered harm and damages and the corporate and the individual Defendants have profited and benefited as a direct and proximate result of the Defendants' fraudulently inducing Mr. Ward to participate and remain in the experiment, using his body and rare condition for unlawful human experimentation.

## VICARIOUS AND SUCCESSOR LIABILITY

66. ACP sponsored the experimental drug trial in which Mr. Ward participated.

67. At all relevant times, Defendant Mr. Auerbach acted as a principal, agent, and employee of ACP, thereby rendering ACP vicariously responsible for his conduct under the doctrine of *respondeat superior*.

68. As the patent licensee and the sponsor of the experimental drug trial in which Mr. Ward participated, ACP is and was also legally responsible for the conduct of Defendant Drs. Schaefer, Shamburek, and Remaley.

69. By virtue of its purchase of ACP's assets, including its ACP-501 assets and the ACP-NIH '614 Patent License, Defendant MedImmune, LLC succeeded to the

liabilities of ACP arising out of the experimental drug trial in which Mr. Ward participated.

70.  As the parent company and owner of MedImmune, LLC, Defendant AZ is and was legally responsible for the liabilities of its subsidiary or division arising out of the experimental drug trial in which Mr. Ward participated.

## COUNT I
## Fraud in the Inducement/Deceit/Intentional Misrepresentation

71.  The Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 70.

72.  In and after January 2013, the individual Defendants, for whose conduct the corporate Defendants are legally responsible and liable, fraudulently induced Mr. Ward to participate and remain in the experimental study of ACP-01, by, among other conduct:

   a. Representing that ACP-501 would effectively reverse his advanced kidney disease;

   b. Representing, when the existing stock of ACP-501 was allegedly dwindling, that a lower dose of ACP-501 was the optimal dose, and that ACP would produce more of the product to enable Mr. Ward to remain in the study at a higher dose;

   c. Failing to explain and describe the study as a non-therapeutic "human experiment," and instead representing it to be therapeutic in nature;

19

    d. Failing to disclose the financial and professional motives, and the clear conflicts of interest, for the experimental study, *viz.* to speed up to market ACP-501 to prevent and treat coronary artery disease and, consequently, to sell ACP, the sole exclusive licensee of the '614 patent, to a pharmaceutical conglomerate such as AZ.

73. Mr. Ward reasonably reasonably relied on one or more of the above-referenced fraudulent misrepresentations or omissions in deciding to participate in the experimental drug trial.

74. Had the Defendants not made the above-referenced fraudulent misrepresentations, or had they disclosed material facts that they fraudulently omitted, Mr. Ward would not have participated in the experimental drug trial, nor would a reasonable person in his position.

75. The above conduct constitutes intentional misrepresentation, fraud in the inducement, and deceit by the individual Defendants, for whose conduct the corporate Defendants are legally responsible or liable.

76. As a direct and proximate result of the intentional misrepresentation, fraud in the inducement, and deceit by the Defendants, Mr. Ward was caused to suffer serious and permanent injury, deteriorating health, diminished life expectancy, bodily pain, and mental anguish.

WHEREFORE, Plaintiff Edmund Ward demands judgment in his favor and against all Defendants, in a sum to be determined at trial, plus interest and costs.

## COUNT II
## Breach or Lack of Informed Consent

77. The Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 60.

78. Before initiating the experimental drug trial, the individual Defendants owed a duty to Mr. Ward to disclose and explain, in a reasonable manner, all significant medical, non-medical, financial, and other information that the Defendants possessed or reasonably should have possessed, that was material to an intelligent decision by Mr. Ward whether to participate in the trial.

79. The individual Defendants' duty included a duty to disclose all material risks and potential complications of the drug trial, a duty to disclose the unproven nature and effectiveness of the treatment, and a duty to disclose that ACP-501 was being researched and developed as a treatment for cardiovascular disease, not kidney disease.

80. The individual Defendants' duty also included a duty to inform Mr. Ward of the Defendants' financial and professional interests and conflicts of interest in the testing, development, and sale of ACP-501, to inform Mr. Ward of the unique nature of his blood and tissue, and to inform Mr. Ward that, without the use and benefit of his unique blood and tissue, the Defendants would be unable to prove the effectiveness of ACP-501 and would be unable to market and sell the product. E.g., 45 C.F.R. Part 46, Subpart A & Subpart D, §§ 46.116 & 46.117, 21 C.F.R. §§ 50.20 & 50.25.

81. The individual Defendants breached their duty to Mr. Ward, by failing reasonably and adequately to disclose and explain the risks and potential complications of the experimental drug trial, the unproven nature and effectiveness of the treatment, their financial and professional interests and conflicts in the development and sale of ACP-501, the unique nature of his blood and tissue, and the Defendants' inability to prove the effectiveness of ACP-501 without the use and benefit of his unique blood and tissue.

82. Had the individual Defendants complied with or satisfied their duty to disclose, Mr. Ward would not have consented to participate in the experimental drug trial.

83. As a direct and proximate result of the individual Defendants' breach or the lack of informed consent, for which the corporate Defendants also are liable, Mr. Ward was caused to suffer serious and permanent injury, deteriorating health, diminished life expectancy, bodily pain, and mental anguish.

WHEREFORE, Plaintiff Edmund Ward demands judgment in his favor and against all Defendants, in a sum to be determined at trial, plus interest and costs.

### COUNT III
### Unjust Enrichment

84. The Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 82.

85. The Plaintiff's participation in the Protocol and its results conferred a significant benefit on ACP and the individual Defendants, who had knowledge of the benefit.

86. The individual Defendants and ACP (and its successors, MedImmune and AZ) voluntarily accepted and retained the benefit unjustly, refusing to compensate the Plaintiff.

87. Under the circumstances, it would be inequitable for the individual Defendants and ACP (and its successors, MedImmune and AZ) to retain the benefit without paying for it, against the fundamental principles of justice, equity, and good conscience.

88. As a direct and proximate result of the Defendants' unjust enrichment, Mr. Ward suffered damages and an unjust detriment.

WHEREFORE, Plaintiff Edmund Ward demands judgment in his favor and against all Defendants, in a sum to be determined at trial, plus interest and costs, and a constructive trust.

### COUNT IV
### Violations of the Due Process Clause of the United States Constitution, the Nuremberg Code, and the Due Process Clause of the Constitution and Declaration of Rights of the Commonwealth of Massachusetts

89. The Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 88.

90. The United States Constitution and its Bill of Rights, by themselves and through the principles articulated in the Nuremberg Code, guarantees Mr. Ward due process of law against the unlawful deprivation of his liberty interest, his right to bodily integrity, and the freedom to care for one's health and person.

91. The Constitution and Declaration of Rights of the Commonwealth of Massachusetts guarantees Mr. Ward due process of law against the unlawful

deprivation of his liberty interest, his right to bodily integrity, and the freedom to care for one's health and person.

92.     The above referenced and pleaded conduct of the individual Defendants and ACP, acting in concert and by express or implied agreement, for which all of the corporate Defendants are also liable, was intentional, extreme, outrageous, and shocks the conscience.

WHEREFORE, Plaintiff Edmund Ward demands judgment in his favor and against all Defendants, in a sum to be determined at trial, plus interest and costs.

## COUNT V
## Violation of the Massachusetts Civil Rights Act

93.     The Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 92.

94.     By their above referenced and pleaded conduct, for which the corporate Defendants also are liable, the individual Defendants, three of whom were physicians, interfered by threats, intimidation, and coercion, and attempted to do so repeatedly, with Mr. Ward's exercise and enjoyment of his due process rights secured by the United States Constitution and the Constitution of the Commonwealth of Massachusetts.

95.     As a direct and proximate result of the Defendants' conduct, Mr. Ward suffered damages.

WHEREFORE, Plaintiff Edmund Ward demands judgment in his favor and against all Defendants, in a sum to be determined at trial, plus interest, attorney's fees, and costs.

## COUNT VI
## Civil Conspiracy

96. The Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 94.

97. The individual Defendants and ACP combined to accomplish a lawful objective through unlawful means, described in detail above, through their peculiar power of coercion over Mr. Ward, as his physicians, and ACP and its principal, had in enrolling him in the Protocol.

98. The individual Defendants and ACP in combination held a peculiar power of coercion over Mr. Ward due to his medical condition, which, individually, they would not have had.

99. As a direct and proximate result of the Defendants' conspiracy and their acts in furtherance of it, Mr. Ward suffered damages.

WHEREFORE, Plaintiff Edmund Ward demands judgment in his favor and against all Defendants, in a sum to be determined at trial, plus interest, attorney's fees, and costs.

## JURY DEMAND

Plaintiff Edmund Ward demands a trial by jury on all Counts of the Complaint.

_____
Edmund Edward Ward, Pro Se
21 Overlook Drive
Weston, Massachusetts 02480

I HEREBY ATTEST AND CERTIFY ON
Dec. 30, 2016, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY: _____
Asst. Clerk

25

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. 16-2304 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| PLAINTIFF(S) EDMUND EDWARD WARD | | DEFENDANT(S) BRUCE AUERBACH, ERNST J. SCHAEFER, M.D., ROBERT D. SHAMBUREK, M.D., ALAN T. REMALEY, M.D., ALPHACORE PHARMA, LLC, ASTRAZENECA BIOPHARMACEUTICALS, INC., and MEDIMMUNE, LLC |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number PRO SE | | ATTORNEY (if known) |

Origin Code Original Complaint
BC.1; BD.1; BE.1

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * YES
_____ (B) (✓) Yes ( ) No

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

THE INDIVIDUAL DEFENDANTS FRAUDULENTLY INDUCED PLAINTIFF TO PARTICIPATE AND REMAIN IN THE EXPERIMENTAL STUDY OF ACP-01. THE INDIVIDUAL DOCTOR DEFENDANTS BREACHED THEIR DUTY TO PROVIDE INFORMED CONSENT. AS A RESULT OF THIS NON-THERAPEUTIC HUMAN EXPERIMENTATION, FOR WHICH PLAINTIFF WAS NOT COMPENSATED, ALPHACORE PHARMA, LLC WAS ACQUIRED BY MEDIMMUNE LLC AND ASTRAZENECA BIOPHARMACEUTICALS, INC, AND DEFENDANTS WERE UNJUSTLY ENRICHED. DEFENDANTS ALSO VIOLATED PLAINTIFFS DUE PROCESS RIGHTS UNDER THE MASS. AND US CONSTITUTIONS,

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.
THE MASSACHUSETTS CIVIL RIGHTS ACT, AND DID SO THROUGH AN UNLAWFUL CIVIL CONSPIRACY.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record
DATE: 7/28/16

I HEREBY ATTEST AND CERTIFY ON
Dec. 30, 2016, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
Asst. Clerk

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                               SUPERIOR COURT
                                                           SUCV2016-02364 – C

EDMUND WARD

v.

BRUCE AUERBACH et al.

## NOTICE OF DENIAL OF ACCEPTANCE INTO
## THE BUSINESS LITIGATION SESSION

This case came before the court for review after initial filing in the Business Litigation Session. However, after review, acceptance into the Business Litigation Session is denied.

This case is referred to the Clerk's Office for reassignment.

                                                    _____
                                                    Janet L. Sanders
                                                    Justice of the Superior Court

Dated: Aug. 1, 2016

I HEREBY ATTEST AND CERTIFY ON
Dec. 30, 2016      , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

    MICHAEL JOSEPH DONOVAN
    CLERK / MAGISTRATE
    SUFFOLK SUPERIOR CIVIL COURT
    DEPARTMENT OF THE TRIAL COURT
BY: _____
    Asst. Clerk

Motion for Reconsideration

Trial Court of Massachusetts
The Superior Court
County Suffolk

Docket Number
1684CV02364-C

Plaintiff Edmund Edward Ward

Defendants
Bruce Auerbach et al

4

EDMUND WARD

Notify

v.

BRUCE AUERBACH et al.

Motion for reinstatement to be admit to BLS — Joint Sander 8/14/16 — Denied

REQUEST FOR ACCEPTANCE INTO
THE BUSINESS LITIGATION SESSION

Please accept this case, Docket No. 1684CV02364, in the Business Litigation Session.

**Corporate defendants are pharmaceutical companies that were unjustly enriched by unlawful human medical experimentation on the plaintiff.**

Excerpts of important paragraphs from the Complaint and Jury Demand are listed below.

2. Defendant Bruce Auerbach ("Mr. Auerbach") is a natural person who, at all relevant times, was an officer and principal of Defendant AlphaCore Pharma, LLC, in Ann Arbor, Michigan.

6. Defendant AlphaCore Pharma, LLC ("ACP") is a business entity with a usual place of business in Ann Arbor, Michigan.

7. Defendant Astra Zeneca Biopharmaceuticals, Inc. ("AZ") is a corporation with a usual place of business in Wilmington, Delaware.

8. Defendant MedImmune, LLC is a division or subsidiary of AZ with a usual place of business in Gaithersburg, Maryland (ACP, AZ, and MedImmune will be refereed to, collectively, as "the corporate Defendants.")

43. Unbeknownst and undisclosed to Mr. Ward, MedImmune purchased ACP for $20,000,000 in April 2013, based principally on Mr. Ward's HDL-C results....

46. The non-therapeutic experimentation on Mr. Ward saved the corporate defendants substantial amounts of money and time in the process of seeking approval of the drug and made the patent, owned by the United States and

Notice sent 8/16/16
EW (SM)

[Stamp: 2016 AUG 8 AM 9:50 MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE SUFFOLK SUPERIOR COURT CIVIL CLERK'S OFFICE]

licensed exclusively to ACP, more valuable....

47. Prior to the sale of ACP to AZ, the Defendants had chosen not to tell Mr. Ward the principal purpose behind the experimentation: the desire to demonstrate increased HDL-C to interest potential purchasers of ACP and its ACP-501 assets as a treatment for or prevention of coronary artery disease. Had Mr. Ward known the true purpose of the experimentation, he never would have agreed to participate....

44. Until the time of its acquisition, ACP was a private company. None of its shareholders, whether private entities or individuals, has ever been made public. The purchase price was also not announced publicly, as it was "immaterial" to AZ's balance sheet.

45. Dr. Schaefer...provided the sales price to Mr. Ward. Upon information and belief, the individual Defendants, acting in concert, were ACP shareholders, owned ACP options or warrants, or otherwise benefited materially from the sale of ACP to AZ **in secret.**

35. As for financial or other conflicts of interest, ...the Consent nowhere reveals the institutional conflict that the United States through its Department of Health and Human Services is the owner of the '614 patent, licensed exclusively to ACP, and NIH not only was the principal site for the study, but it also employed the principal investigator, Dr. Schamburek. The Shareholders of ACP were never revealed in the Consent (nor were they ever revealed publicly), nor did the Consent reveal the financial and other terms of the ACP-NIH '614 Patent License.

44. Until the time of its acquisition, ACP was a private company. None of its shareholders, whether private entities or individuals, have ever been made public. The purchase price was also not announced publicly, as it was "immaterial" to AZ's balance sheet.

65. Mr. Ward had suffered harm and damages and the corporate and the individual Defendants have profited and benefited as a direct and proximate result of the Defendants' fraudulently inducing Mr. Ward to participate and remain in the experiment, using his body and rare condition for unlawful human experimentation.

## VICARIOUS AND SUCCESSOR LIABILITY

66. ACP sponsored the experimental drug trial in which Mr. Ward participated.

67. At all relevant times, Defendant Mr. Auerbach acted as a principal, agent, and employee of ACP, thereby rendering ACP vicariously responsible for his conduct under the doctrine of *respondeat superior*.

68. As the patent licensee and the sponsor of the experimental drug trial in which Mr. Ward participated, ACP is and was also legally responsible for the conduct of Defendant Drs. Schaefer, Shamburek, and Remaley.

69. By virtue of its purchase of ACP's assets, including its ACP-501 assets and the ACP-NIH '614 Patent License, Defendant MedImmune, LLC succeeded to the liabilities of ACP arising out of the experimental drug trial in which Mr. Ward participated.

70. As the parent company and owner of MedImmune, LLC, Defendant AZ is and was legally responsible for the liabilities of its subsidiary or division arising out of the experimental drug trial in which Mr. Ward participated.

72. In and after January 2013, the individual Defendants, for whose conduct the corporate Defendants are legally responsible and liable, fraudulently induced Mr. Ward to participate and remain in the experimental study of ACP-501, by, among other conduct…
    d. Failing to disclose the financial and professional motives, and the clear conflicts of interest, for the experimental study, *viz.* to speed up to market ACP-501 to prevent and treat coronary artery disease and, consequently, to sell ACP, the sole exclusive licensee of the '614 patent, to a pharmaceutical conglomerate such as AZ.

75. The above conduct constitutes intentional misrepresentation, fraud in the inducement, and deceit by the individual Defendants, for whose conduct the corporate Defendants are legally responsible or liable.

80. The individual Defendants' duty also included a duty to inform Mr. Ward of the Defendants' financial and professional interests and conflicts of interest in the testing, development, and sale of ACP-501, to inform Mr. Ward of the unique nature of his blood and tissue, and to inform Mr. Ward that, without the

use and benefit of his unique blood and tissue, the Defendants would be unable to prove the effectiveness of ACP-501 and would be unable to market and sell the product. E.g., 45 C.F.R. Part 46, Subpart A & Subpart D, §§ 46.116 & 46.117, 21 C.F.R. §§ 50.20 & 50.25.

81. The individual Defendants breached their duty to Mr. Ward, by failing reasonably and adequately to disclose...their financial and professional interests and conflicts in the development and sale of ACP-501, the unique nature of his blood and tissue, and the Defendants' inability to prove the effectiveness of ACP-501 without the use and benefit of his unique blood and tissue.

82. Had the individual Defendants complied with or satisfied their duty to disclose, Mr. Ward would not have consented to participate in the experimental drug trial.

85. The Plaintiff's participation in the Protocol and its results conferred a significant benefit on ACP and the individual Defendants, who had knowledge of the benefit.

86. The individual Defendants and ACP (and its successors, MedImmune and AZ) voluntarily accepted and retained the benefit unjustly, refusing to compensate the Plaintiff.

87. Under the circumstances, it would be inequitable for the individual Defendants and ACP (and its successors, MedImmune and AZ) to retain the benefit without paying for it....

/s/ hw    Aug. 8, 2016

Pro Se Plaintiff
Edmund Ward
21 Overlook Drive
Weston, MA 02493
(703) 899-0739 (cell phone)

I HEREBY ATTEST AND CERTIFY ON
Dec. 30, 2016, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY: _____
Asst. Clerk

NOTIFY

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                  SUPERIOR COURT DEPARTMENT
                                              Of The Trial Court

---

EDMUND EDWARD WARD, )
)
Plaintiff, )
)
v. )
)
BRUCE AUERBACH, ERNST J. SCHAEFER, )
M.D., ROBERT D. SHAMBUREK, M.D., )    C. A. No. 1684-cv-02364
ALAN T. REMALEY, M.D., ALPHACORE )
PHARMA, LLC, ASTRAZENECA )
BIOPHARMACEUTICALS, INC., and )
MEDIMMUNE, LLC, )
)
Defendant. )
)

*Handwritten annotations: "11/14/16 Allowed to December 9, 2016" "7th January" "JSC"*

*Stamp: SUFFOLK SUPERIOR CIVIL CLERK'S OFFICE 2016 NOV -4 PM 4:27 MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE*

### EMERGENCY MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT ON BEHALF OF ALPHACORE PHARMA, LLC, ASTRAZENECA BIOPHARMACEUTICALS, INC. AND MEDIMMUNE, LLC

Alphacore Pharma, LLC, AstraZeneca BioPharmaceuticals, Inc. and Medimmune, LLC (collectively the "Corporate Defendants"), by their undersigned counsel, respectfully request that the time to respond to the complaint be enlarged to December 9, 2016. This request is made with the consent of Mr. Ward, who is pro se, but who has counsel assisting him with service of the complaint. Although this matter was filed some months ago, it has only recently been "served" on the Corporate Defendants. The allegations in the complaint are quite complex and involve a study conducted by the National Heart Lung and Blood Institute of the National Institute of Health; counsel has just recently been selected by the Corporate Defendants and requires additional time to investigate the facts as pleaded. This is the first request for an extension and,

*Handwritten margin notes: "Notice Sent 11.15.16" "WAZ" "M+E up" "FEW" "(mo)"*

ME1 23628224v.1

given the consent of the plaintiff, there can be no prejudice. This motion is filed as an emergency motion because the earliest date that a response might otherwise be due is November 8, 2016.

Wherefore, the Corporate Defendants move that the time to respond to the complaint be enlarged to and including December 9, 2016.

>  ALPACORE PHARMA, LLC, ASTRAZENECA BIOPHARMACEUTICALS, INC. AND MEDIMMUNE, LLC.
>
>  By their attorney,
>
>  /s/ William A. Zucker
>  William A. Zucker, BBO # 541240
>  McCarter & English, LLP
>  265 Franklin Street
>  Boston, MA  02110
>  (617) 449-6500
>  wzucker@mccarter.com

November 4, 2016

I HEREBY ATTEST AND CERTIFY ON

__Dec. 30, 2016__, THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: /s/ Margaret M. Sellon
Asst. Clerk

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November, 2016, a true copy of the Emergency Motion for Extension of Time to Respond to the Complaint was served upon all known appearing attorneys or parties of record by first class mail, postage prepaid, as follows:

Edmund Edward Ward, Pro Se
21 Overlook Drive
Weston, MA  02480

Patrick T. Clendenen, Esq.
Davis, Malm & D'Agostine, PC
One Boston Place, Suite 3700
Boston, MA  02018

Mark S. Furman, Esq.
Tarlow, Breed, Hart & Rodgers PC
101 Huntington Ave., 5th Fl.
Boston, MA 02199

By: _____/s/_____

Date: 11/4/16

ME1 23628224v.1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                           SUPERIOR COURT
                                                      C.A. NO.: 1684CV02364

---

EDMUND EDWARD WARD, )
    Plaintiff )
)
VS. )
)
BRUCE AUERBACH, ERNST J. SCHAEFER, M.D., )
ROBERT D. SHAMBUREK, M.D., )
ALAN T. REMALEY, M.D., )
ALPHACORE PHARMA LLC, )
ASTRAZENECA BIOPHAMACEUTICALS, INC., )
MEDIMMUNE LLC )
    Defendants. )
)

---

## ANSWER AND JURY TRIAL DEMAND OF THE DEFENDANT, ERNST J. SCHAEFER, M.D., TO THE PLAINTIFF'S COMPLAINT

### PARTIES

1. The Defendant is without knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 1 of the Complaint and, therefore, calls upon the Plaintiff to prove same.

2. The allegations set forth in Paragraph 2 of the Complaint do not pertain to this Defendant; therefore, no response is made thereto as none is required.

3. The Defendant admits that, at all relevant times, he was a physician licensed to practice medicine in the Commonwealth of Massachusetts with a principal place of business at Boston Heart Diagnostics, 175 Crossing Boulevard, Framingham, Middlesex County, Massachusetts 01702, and denies the remaining allegations in this paragraph of the Complaint.

4. The allegations set forth in Paragraph 4 of the Complaint do not pertain to this Defendant; therefore, no response is made thereto as none is required.

5. The allegations set forth in Paragraph 5 of the Complaint do not pertain to this Defendant; therefore, no response is made thereto as none is required.

6. The allegations set forth in Paragraph 6 of the Complaint do not pertain to this Defendant; therefore, no response is made thereto as none is required.