UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDMUND EDWARD WARD,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE AUERBACH, ERNST J. SCHAEFER, M.D., ROBERT D. SHAMBUREK, M.D., ALAN T. REMALEY, M.D., ALPHACORE PHARMA, LLC, ASTRAZENECA BIOPHARMACEUTICALS, INC.; and MEDIMMUNE, LLC,<br><br>Defendants. | Civil Action No.: 1:16-CV-12543 |

**Plaintiff Edmund Edward Ward's Opposition to the Motion to Substitute the United States for Defendants Robert D. Shamburek, M.D. and Alan T. Remaley, M.D.**

**Introduction**

The Plaintiff, Edmund Edward Ward's, claims against the individual Defendants, Dr. Shamburek and Dr. Remaley ("Defendants"), seek damages for violations of Mr. Ward's liberty rights under the Due Process Clause of the United States Constitution and the Nuremberg Code under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The Defendants are attempting to escape liability under *Bivens* by substituting the United States as the named defendant under the Federal Tort Claims Act ("FTCA"). But the

FTCA does not apply to claims for violations of the United States Constitution.

In his Complaint, Mr. Ward decided to name the Defendants individually and to pursue a *Bivens* claim, rather than file a claim under the FTCA naming the United States of America. Substitution of United States of America for the Defendants will bring these claims under the FTCA, and the United States will then, no doubt, claim immunity[1] and a statute of limitations bar. Mr. Ward, as the Plaintiff, controls his claims, and the United States in its motion is simply attempting indirectly to dismiss Mr. Ward's chosen claims.

Mr. Ward was born with an extremely rare genetic deficiency of a bloodstream enzyme, lecithin-cholesterol acyltransferase (LCAT). Due to this condition, Mr. Ward is and has been in stage 5 kidney failure and produces virtually no cholesterol in his body. This made Mr. Ward the perfect experimental candidate for the Defendants. The Defendants took advantage of Mr. Ward's condition and violated his constitutional rights. Mr. Ward has the right to pursue these Constitutional violations under a *Bivens* theory and the Court should not deny Mr. Ward this right by substituting the United States of America for the Defendants.

[1] To the extent that the United States will claim that Drs. Shamburek and Remaley are entitled to complete immunity from *Bivens* liability under *Hui v. Castaneda,* 130 S. Ct. 1845 (U.S. 2010); *see also Camerano v. United States*, 196 F. Supp.3d 172, 180 (D. Mass. 2016), the United States has not made the required evidentiary showing under 42 U.S.C. § 233(a), and the Plaintiff, *infra*, requests both discovery and a hearing on any such defense raised by the Government.

## Argument

### A. Drs. Shamburek and Remaley's Motion to Substitute should be denied because the FTCA does not apply to claims for violations of the United States Constitution.

The Defendants Motion to Substitute should be denied because the Plaintiff is alleging Constitutional violations, which do not fall under 28 U.S.C. § 2679 or the FTCA. The Government's Notice of Removal explicitly relies on 28 U.S.C. § 2679(d)(2) as grounds for removal and alleges that Drs. Shamburek and Remaley were acting within the scope of their office or employment. [Dkt. 1]. Its Motion to Substitute and the Certificate of the Acting Attorney General similarly rely on section 2679(d). [Dkt. 33]. Generally, the FTCA provides the "exclusive civil remedy available against government employees acting within the scope of their employment." *Donahue v. Connolly*, 890 F. Supp. 2d 173, 178 (D. Mass. 2012). But the FTCA expressly excludes "claims 'brought for a violation of the Constitution of the United States.'" *Id.* (quoting 28 U.S.C. § 2679(b)(2)(A)). Indeed, it has been held that *Bivens* "is the method by which constitutional tort claims are brought, while claims for negligence and certain intentional (but not constitutional) torts are brought under the FTCA." *Omran v. United* States, 2015 WL 1523587, *8 (D. Mass. 2015) (citation omitted). Further, *Bivens* remedies are available for violations of the Constitution even though the allegations also support a claim under the FTCA. *Carlson v. Green*, 446 U.S. 14, 19-23 (1980). They can be complimentary but they are separate and

distinct. Finally, claims for violations of the Due Process Clause of the Fifth Amendment are properly brought as *Bivens* actions. *Davis v. Passman*, 442 U.S. 228, 234 (1979). Therefore, a certification by the Attorney General, and substitution of the United States of America as the defendant under 28 U.S.C. § 2679(d), is not applicable for Mr. Ward's constitutional claims.

Mr. Ward's primary claims against the Defendants are *Bivens* claims for the Defendants unlawful violations of his due process rights under the Constitution of the United States. The Due Process Clause protects Mr. Ward against the unlawful deprivation of his liberty interests, his right to bodily integrity, and the freedom to care for one's health and person. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973). A person has a constitutionally protected liberty interest in determining their medical treatment. *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990). This right includes with it a right to information "a reasonable patient would deem necessary to make an informed decision regarding medical treatment." *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006).

As forecast by justices of the United States Supreme Court, these liberty interests should be examined under the auspices of the Nuremberg Code. Following World War II, the Nuremberg trials "deeply impressed upon the world that experimentation with unknowing human subjects is morally and legally unacceptable." *United States v. Stanley*, 483 U.S. 669, 687 (1987) (Brennan, J., dissenting). In response, the "*United States* Military Tribunal

established the Nuremberg Code as a *standard against which to judge* [] *scientist who experimented with human subjects*." *Id.* (emphasis added). "[T]he Constitution's promise of due process of law [therefore] guarantees at least compensation for violations of the principle stated by the Nuremberg Military Tribunals 'that the voluntary consent of the human subject is absolutely essential...to satisfy moral, ethical and legal concepts.'" *Washington v. Harper*, 494 U.S. 210, 237 n.2 (1990) (Stevens, J., dissenting).

The Nuremberg Code's first principle states: "*The voluntary consent of the human subject is absolutely essential.* The duty and responsibility for ascertaining the quality of the consent rests upon each *individual* who initiates, directs or engages in the experiment. *It is a personal duty and responsibility which may not be delegated to another with impunity.*" *Stanley*, 483 U.S. at 687 (1987) (emphasis is original) (citing *United States v. Brandt* (The Medical Case), 2 Trials of War Criminal Before the Nuremberg Military Tribunals Under Control Council Law No. 10, pp. 181-182 (1949)).

Here, the Defendants unlawfully experimented on Mr. Ward and violated his constitutionally protected liberty interests by, among other things, (1) claiming that ACP-501 would reverse Mr. Ward's kidney failure; (2) failing to disclose the true purposes of the experiment; and (3) failing to disclose the Defendants' personal, professional, institutional, and financial conflicts of interest.

The Defendants' disclosure to Mr. Ward regarding their experiment with ACP-501 was inadequate to protect his constitutional rights and clearly violates the main purposes of the Nuremberg Code. First, the Defendants repeatedly told Mr. Ward the experiment would reverse his kidney failure while failing to inform Mr. Ward that ACP-501 only showed promise as a "method for decreasing accumulation of cholesterol in arteries in a human subject". (Compl. ¶ 14). Second, the Defendants failed to inform Mr. Ward of the primary purposes of their experiment. Among other things, the Clinical Protocol for ACP-501 stated that "[t]he primary objective is to assess the safety and tolerability of ACP-501... ." (Compl. ¶ 36). The Defendants performed this experiment on Mr. Ward hoping the results would show ACP-501 as a breakthrough in the prevention and treatment of cardiovascular disease. In a white paper, Defendant Shamburek acknowledged the non-therapeutic nature of the experimentation on Mr. Ward, indicating that ACP-501 was unlikely to reverse Mr. Ward's kidney failure. (Compl. ¶ 51). Third, the Defendants failed to disclose their conflicts of interest. Among other things, the ACP-501 patent was owned and exclusively licensed by the Defendants employers. (Compl. ¶ 35). As such, the Defendants had additional incentives to proceed with this experiment, regardless of the outcome for Mr. Ward, including his heart attack in the midst of the study. (Compl. ¶ 28).

Finally, even if the Defendants had provided Mr. Ward with the truth about their experimentation and its likely effects, the Defendants did not

provide the National Institute of Health's Consent to Participate in a Clinical Research Study until at least 18 days after Mr. Ward started the study. (Compl. ¶ 29). This alone demonstrates the Defendants complete disregard toward Mr. Ward and his constitutionally protected rights. Even worse, throughout the time of the experiment Defendants consistently counseled Mr. Ward against dialysis treatments, which had been recommended by his nephrologist for his kidney failure, to keep him in the experiment. (Compl. ¶ 50). This continued until Mr. Ward's nephrologist told him that he could no longer delay dialysis because of the state of his kidney. *Id.*

The Defendants used Mr. Ward as a human test subject to advance their own interests with little regard for Mr. Ward's well-being and condition. They did so by lying to him and without providing him with all of the relevant information needed to make an informed medical decision. This violated Mr. Ward constitutionally protected rights.

The FTCA is not applicable to allegations of constitutional violations; therefore, the Court should deny the Defendants Motion to Substitute.

**B. If the Court finds the FTCA is potentially applicable, then the Court should allow pre-hearing discovery and hold a hearing on the Acting Attorney General's certification that the Defendants were acting within the scope of their employment.**

Under 28 U.S.C. § 2679(d)(1), the acting Attorney General's scope of employment certification is not conclusive for the substitution of the United States of America as the defendant and is reviewable by the district court.

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419 (1995). Further, the scope of employment issue should be determined according to state law. *Aversa v. United States*, 99 F.3d 1200, 1208 (1st Cir. 1996).

Under Maryland law, the test for determining whether an employee's "acts were within the scope of [] employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991). The court will consider the employee's job duties, the locations of employment in relation to the alleged constitutional violations, and whether the conduct was appropriate and authorized. *Id.* at 471 ("in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's acts are personal, ... or where an employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment".

Here, the Defendants have not submitted sufficient evidence to support that they were acting within the scope of their employment. The Motion to Substitute simply states that "[d]uring the period of the time alleged in this Complaint, the Federal Defendants were employees of ... a division of the U.S. Department of Health and Human Services." [Dkt. 33]. Additionally, Exhibit A, submitted with the Motion to Substitute, also lacks any information the Court would need to examine this certification. The certification simply states "I hereby certify that on the basis of the

information now available ... the [Defendants] were acting within the scope of their employment as employees of the United States at the time of the alleged incident."

The Motion to Substitute and its accompanying exhibit do not provide any of the "information now available" on the Defendants employment that the Court would need to examine the Attorney General's certification.

The Complaint, and Mr. Ward's opposition papers and exhibits thereto, also make a strong preliminary showing that the Defendants were not acting within the scope of their office or employment. Indeed, the Defendants have admitted in their own communications that, before Mr. Ward, there had been no LCAT-deficient human testing of ACP-501, only "LCAT KO mice." [Dkt 35-1 & 36-3 at 3]. Yet they still claim "compassionate" or "expanded access" use under an Investigational New Drug application, one that they themselves admit had not been filed. [Dkt. 36-6 at 3]. And there had been absolutely no LCAT-deficient human "use" (on anything except mice) until Mr. Ward, thus revealing an unauthorized *ultra vires* protocol. Therefore, if the Court finds the FTCA is potentially applicable, the Plaintiff requests that the Court both allow pre-hearing discovery and hold a hearing to determine whether the Defendants were acting within the scope of their employment at the time of the incident under 28 U.S.C. § 2679(d)(1).

## Conclusion

Defendants' Motion to Substitute the United States for Defendants Robert D. Shamburek, M.D. and Alan T. Remaley, M.D. should be denied because the FTCA does not apply to allegations of constitutional violations. If the Court finds the FTCA potentially does apply, the Plaintiff requests the Court allow pre-hearing discovery and hold a hearing to determine whether the Defendants were acting within the scope of their employment under 28 U.S.C. § 2679(d)(1).

Respectfully Submitted,
EDMUND EDWARD WARD,
By his attorneys,

/s/ Patrick T. Clendenen
Patrick T. Clendenen, 564165
DAVIS MALM & D'AGOSTINE, P.C.
One Boston Place, 37th Floor
Boston, MA 02108
(617) 367-2500
pclendenen@davismalm.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 9, 2017.

/s/ Patrick T. Clendenen
Patrick T. Clendenen