UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDMUND EDWARD WARD,<br>Plaintiff<br><br>V.<br><br>ERNST J. SCHAEFER, M.D.,<br>Defendant. | CIVIL ACTION NO.<br>1:16-cv-12543-FDS |

### OPPOSITION OF THE DEFENDANT, ERNST SCHAEFER, M.D., TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO COMPEL

NOW COMES the Defendant, Ernst Schaefer, M.D. ("Dr. Schaefer" or "Defendant"), by his attorneys in the above-entitled matter and hereby states his Opposition to Plaintiff's Supplemental Memorandum in Support of Second Motion to Compel on the grounds that there has not been any spoliation of evidence and the plaintiff's Memorandum is comprised of mere speculation. Further, the Defendant again Opposes Plaintiff's request for the Court to impose sanctions as there has been no spoliation of evidence and the Defendant, through his counsel, has responded in good faith to Plaintiff's First Request for the Production of Documents, and to all discovery requests. As grounds for this Opposition, the Defendant states the following.

1

## BACKGROUND

This is a complex action based in alleged medical malpractice in which the Plaintiff alleges that Dr. Schaefer fraudulently induced him to participate in a compassionate use protocol research study at the National Institute of Health (NIH), a study in which Dr. Schaefer played no role and for which he received no compensation. The Plaintiff further alleges that Dr. Schaefer led the Plaintiff to believe that participating in a clinical trial of ACP-501 (a new drug trial) would reverse his advanced kidney disease caused by his genetic (from birth) LCAT deficiency, and further alleges that Dr. Schaefer provided medical supervision of the ACP-501 trial. Mr. Ward alleges that he suffered serious and permanent bodily injury, deteriorating health, diminished life expectancy, bodily pain and mental anguish as a result of his participation in the research study at NIH, and that he did not share in the money received when the pharmaceutical company sold ACP-501. Dr. Schaefer firmly denies all of Plaintiff's allegations, and specifically denies that he had any involvement in the treatment of Mr. Ward as part of the ACP-501 clinical trial conducted at the National Institutes of Health (NIH), nor that he in any way induced Mr. Ward to participate in this research study.

The Plaintiff originally filed his Complaint on or about July 28, 2018 in the Massachusetts Superior Court. On December 16, 2016, this case was removed from the Suffolk Superior Court to the United States District Court for the District of Massachusetts, where it is now pending. Numerous motions were filed in the interim by and between the now-dismissed parties and the Plaintiff, argued by counsel, and ruled upon by the Court.

Thereafter, Plaintiff filed a Motion to take his own deposition. On November 17, 2017, the Court denied Plaintiff's Motion stating that while there was little doubt the plaintiff was seriously ill, plaintiff had not provided an affidavit from any treating physician and little to no discovery had occurred.

Plaintiff served his First Request for the Production of Documents to Dr. Schaefer. Request No. 8 of Plaintiff's First Requests asks for "all documents concerning communications by you or any person concerning, supporting, or refuting any of the allegations in the Complaint and/or the Answer in your possession, custody, or control, by, with, or between" forty-two different individuals or entities. On May 25, 2018, the Defendant provided his Responses to the Plaintiff's First Request for the Production of Documents, including two documents responsive to Request No. 8.

On June 13, 2018, the parties attended a Rule 26 Scheduling Conference before the Honorable Judge Saylor to set discovery deadlines in this case. Counsel for the Plaintiff raised a concern that communications were not produced as part of Defendant's document Response, and Plaintiff renewed his Motion to Compel with regard to same. In response, Defendant provided a sur-reply, attaching an Affidavit from Dr. Schaefer in which he specified his custom and practice for the maintenance and destruction of his email accounts. (See Affidavit of Dr. Schaefer, attached hereto as **Exhibit A**). The Defendant specified that all of his email communications (not just those regarding Mr. Ward) are made using his email addresses at Boston Heart Diagnostics and Tufts University, and he outlined his email retention/deletion custom and practice.

On August 23, 2018, the parties appeared for a hearing on the Plaintiff's renewed Motion to Compel before Magistrate Judge M. Page Kelly. Judge Kelly ordered the

plaintiff to issue third-party subpoenas directly to Boston Heart Diagnostics (BHD) and Tufts University (Tufts) for any email correspondence they maintained in their system which Dr. Schaefer had deleted pursuant to his custom and habit. (See Order from Magistrate Judge Kelly, attached hereto as **Exhibit B**). Counsel for the Defendant assisted Plaintiff in serving subpoenas by providing the relevant contact information for both entities in order to maximize the plaintiff's likelihood of getting the requested email correspondence. Plaintiff served subpoenas on Boston Heart Diagnostics and Tufts University. (See Plaintiff's Subpoenas to Boston Heart Diagnostics and Tufts, attached hereto as **Exhibit C**). The subpoenas specifically state that Plaintiff is requesting "all documents concerning communications by defendant Dr. Ernst J. Schaefer in your possession, custody, or control, **with or between the following individuals, between January 1, 2010 and December 16, 2016" to 23 individuals, including Mr. Ward, his sister Virginia Ward and prior defendants Dr. Robert Shamburek, Dr. Alan Remaley and Bruce Auerbach**. See **Exhibit C**.

On or about October 25, 2018, Defense counsel received notice from Boston Heart Diagnostics that they had produced email correspondence pursuant to Plaintiff's subpoena. On November 2, 2018, both parties attended a Status Conference with Judge Saylor. At this status conference, Defense Counsel learned that Plaintiff's Counsel had also received responsive documents pursuant to their subpoenas to Tufts. Tufts University produced 71 pages of correspondence between Dr. Schaefer and other individuals dated May 17, 2016 to October 13, 2016, and Boston Heart Diagnostics produced 1,124 items via a PST file. The 1,124 items contain email correspondence dated January 4, 2016 through October 17, 2018, and calendar invitations dated

September 23, 2011 through July 10, 2017. Further, the PST file of Dr. Schaefer's email contains contacts entered into Dr. Schaefer's email from September 27, 2012 through the present. As stated in Defendant's (pending) Emergency Motion for Protective Order, Boston Heart Diagnostics produced email correspondence outside the scope of the individuals and dates requested by the subpoena, and produced to Plaintiff documents subject to the attorney-client privilege, marital privilege and attorney work product privilege. Plaintiff counsel reviewed the clearly privileged materials it received in error, generating the pending Emergency Motion.

## PROCEDURAL HISTORY

Dr. Schaefer first saw Mr. Ward in consultation for diagnosis of his LCAT deficiency in July 2010. See **Exhibit A**. Throughout 2011 and 2012, Mr. Ward routinely met with Dr. Schaefer. During this time, Dr. Schaefer communicated with Dr. Remaley of the NIH regarding the approval of the potential compassionate use protocol. Id. Mr. Ward began treatment at the NIH in January 2013 and continued receiving treatment there until September 2013. Id. Mr. Ward continued working with Dr. Schaefer until 2015. See Deposition of Virginia Ward, attached hereto as **Exhibit D,** at p. 167, 182.

Pursuant to the Plaintiff's subpoena, Boston Heart Diagnostics produced 1,124 documents of Dr. Schaefer's email correspondence, including privileged correspondence, and retrieved "permanently deleted" emails dating back to 2016.[1] Tufts University also produced Dr. Schaefer's email correspondence pursuant to the subpoena, including retrieving "permanently deleted" emails dating back to 2016. To date, the Plaintiff has not

---

[1] "Permanent deletion" from a user's email account does not permanently erase the email data. To the contrary, as shown by the documents/ESI produced by BHD and Tufts University, even deleted emails that remained on the entities' servers were retrieved and produced to Plaintiff.

obtained the document retention policy of either Boston Heart Diagnostics or Tufts University and thus, we are not aware how long BHD and Tufts maintain "permanently deleted" email correspondence on their servers.

## ARGUMENT

### I.  There Was No Spoliation of Evidence in this Case

Spoliation is the "intentional, negligent, or malicious destruction of relevant evidence." Townsend v. Am. Insulated Panel Co., Inc., 174 F.R.D. 1, 4 (D.Mass. 1997). A finding of spoliation requires: 1) an act of destruction; 2) discoverability of the evidence; 3) an intent to destroy the evidence; 4) occurrence of the act at a time after suit has been filed, or, if before, at a time when the filing is fairly perceived as imminent; and 5) prejudice to the opposition party. Gordon v. DreamWorks Animation SKG, Inc., 935 F.Supp.2d 306, 313 (D.Mass. 2013) (citing McGuire v. Acufex Microsurgical, Inc., 175 F.R.D. 149, 154 (D.Mass. 197)). In general, an adverse inference based on spoliation "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, negligent destruction would not support the logical inference that the evidence was favorable to the defendant." United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010). However, "mere negligence in the destruction of evidence" can sometimes be sufficient to merit sanctions. Citizens for Consume v. Abbott Laboratories, 2007 WL 7293758, at 7 (D.Mass. 2007).

Under the Fed. R. Civ. P. 37(e), where a court finds that electronically stored information (ESI) should have been preserved in the anticipation or conduct of litigation but was lost because a party failed to take reasonable steps to preserve it **and it cannot be restored or replaced through additional discovery**, the court may order measures

6

necessary to cure the prejudice. If the court finds that the party acted with the intent to deprive another party of the information's use in litigation, the court may presume that the lost information was unfavorable to the party and instruct the jury that it may or must presume the information was unfavorable or dismiss the action or enter a default judgment. Id.  By definition, if the information has been restored or replaced it has *not* been spoliated.

### A. The Inability to Locate Dr. Schaefer's Email Correspondence is not Spoliation because Dr. Schaefer could not have Reasonably Known it Would be Relevant to this Potential Litigation.

The doctrine of spoliation permits sanctions only when the litigant or his expert negligently or intentionally loses or destroys evidence that the litigant (or expert) knows or reasonably should know might be relevant to a possible action, even when the spoliation occurs before an action has been commenced. A court properly finds that spoliation of evidence has occurred when the moving party establishes a two-prong "evidentiary foundation." Booker v. Mass. Dept. of Public Health, 612 F.3d 34, 46 (1st Cir. 2010). First, the moving party must demonstrate that the opposing party knew of "the claim (that is, the litigation or the potential for litigation." Booker, 612 F.3d at 46. Second, the moving party must show that the opposing party knew of the evidence's "potential relevance to that claim." Booker, 612 F.3d at 46.

The duty to preserve evidence arises when "litigation is reasonably anticipated." Gordon, 935 F.Supp.2d at 314. The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. Velez v. Marriott PR management, Inc., 590 F.Supp.2d 235, 258 (D.P.R. 2008). "The threat of

a lawsuit must be sufficiently apparent, however, that a reasonable person in the spoliator's position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute." Kippenhan, 697 N.E.2d at 530. Furthermore, "the law does not impose unreasonable burdens on a party in relation to the duty to preserve evidence." MacLellan v. Shaw's Supermarket, Inc., 24 Mass. L. Rptr. 317 (June 23, 2008) at *2. However, evidence can only be preserved for so long in the absence of some notice of a need to do so. Blake v. NSTAR Elec. Corp., 2013 WL 5348561, fn 3 (D.Mass. 2013).

The Plaintiff contends that Dr. Schaefer was aware as early as September 23, 2014 that litigation was reasonably foreseeable. On September 23, 2014, the Plaintiff and his sister, Virginia Ward, presented to Dr. Schaefer to discuss "any compensation for his time and efforts." See **Exhibit A**, at p. 18. While the plaintiff and his sister, Virginia Ward, have testified that this meeting was confrontational and that Mr. Ward "felt I needed to talk to a lawyer," this is not enough to find litigation reasonably foreseeable for the purposes of determining spoliation. Id. In the email correspondence Dr. Schaefer sent regarding this meeting, no litigation is mentioned. In fact, the only reference to the involvement of an attorney is Dr. Schaefer's statement that "the point the patient's sister is making (she is a lawyer) is that the patient spent considerable time an[d] effort on getting this experimental therapy and he should be compensated for this." Id. The plaintiff fails to mention that his sister was present at numerous medical appointments and spent one month at the NIH with him. See **Exhibit D,** p. 27, 30, 39-40, 79. She had also been present for appointments and meetings with Dr. Schaefer between 2010 and 2014. Id.

Therefore, the fact that she happens to be an attorney and was present for the meetings is not sufficient to deem that litigation was reasonably foreseeable to Dr. Schaefer.

Plaintiff also contends that on October 14, 2014, Dr. Schaefer was aware that litigation was reasonably foreseeable when he met with the Plaintiff and his sister, who "indicated to me that **he and his sister had no plans whatsoever to file suit against AlphaCore**." See **Exhibit A**, at p. 19 (emphasis added). The email correspondence makes clear that the plaintiff had *no* plans to pursue litigation. This statement affirmatively proves that Dr. Schaefer understood that litigation was *not* reasonably foreseeable based on the statements of Plaintiff to him. Dr. Schaefer contends that at no point prior to 2016, when he received the Summons and Complaint in this matter, did he ever anticipate that he would be involved in litigation brought by Mr. Ward. See **Exhibit A**. In fact, Mr. Ward continued to work with Dr. Schaefer well into 2015, indicating that their relationship was ongoing and that litigation was not imminent. Further, even Plaintiff describes that Dr. Schaefer was "a father figure" to him, making it highly unlikely he would ever bring a claim against the very person who did his best to try to help Plaintiff in every way. See Deposition of Edmund Ward, Day 1 at p. 65, attached hereto as **Exhibit E**. Mr. Ward testified that he lost his father in 2009 and Dr. Schaefer "took me under his wing, talked social issues, you know, counseled me on my rare condition." Id. Therefore, given their relationship, Dr. Schaefer never imagined that Mr. Ward would sue him prior to the receipt of legal papers in December 2016.

Sanctions for spoliation are not warranted simply because Plaintiff attended an appointment with Dr. Schaefer with his sister, who happens to be an attorney, or because Plaintiff indicated he would not pursue litigation against other individuals. In E.E.O.C. v.

Chipotle Mexican Grill, the Court declined to issue sanctions for the deletion of video footage which the defendant based its termination of the plaintiff on, because it was apparently erased through an automatic process at some point between 30 and 90 days after its creation. The plaintiff did not meet its burden to demonstrate that the destruction occurred at a time when the party was on notice that the evidence might be relevant to potential litigation as it was not clear that the defendant received notice prior to those 90 days, despite allegations that the plaintiff had provided evidence earlier. 98 F.Supp.3d 198, 209 (D.Mass. 2015). Further, in McCarthy v. Van Aarle, the Court declined to hold that the mere fact that an accident occurred on a homeowner's property was sufficient to alert that property owner that he might be the target of a lawsuit and should save the ladder involved in the accident. 18 Mass. L. Rptr. 186 (July 19, 2004). Similarly, in Attardo v. City of Boston, the Court held that simply because a prisoner was in custody at the police station and allegedly suffered injuries while in custody did not impose a duty on the police station to maintain records of the plaintiff's custody. 12 Mass. L. Rptr. 321 (July 27, 2000).

In cases where a Court has permitted sanctions for spoliation, the threat of a lawsuit was much more apparent than in the case at hand. See Scott v. Garfield, 454 Mass. 790 (2009) (sanctions permitted when defendant discarded a portion of a porch after he had already received a call from plaintiff attorney indicating that a claim was going to be brought and specifically requesting the defendant save a separate portion of the porch); Bolton v. Massachusetts Bay Transp. Authority, 32 Mass. App. Ct. 654 (1992) (sanctions for spoliation permitted when the defendant scrapped a bus involved in a car accident after it was specifically requested by plaintiff's attorney to preserve the bus);

10

Munsinger v. Berkshire Medical Center, 1998 WL 1183954 (October 9, 1988) (spoliation found when defendant hospital discarded certain medical equipment that may have been non-sterile when they discovered during the procedure the equipment may have been non-sterile, stopped the procedure, and alerted their malpractice carrier before the medical procedure was over); Gordon, 935 F.Supp.2d at 314 (spoliation found when plaintiff immediately set about to preserve work by filing a registration with Copyright Office before film's release, a prerequisite to a copyright infringement suit).

B. The Unavailability of the Requested Documents from Dr. Schaefer is Not Spoliation Because These Documents were not Intentionally Destroyed or Intentionally Lost to Obstruct Litigation.

The routine deletion of Dr. Schaefer's emails – not just those pertaining in any way to Plaintiff – does not amount to spoliation of evidence because spoliation does not include a fault-free destruction or loss of physical evidence. Kippenhan v. Chaulk Services, Inc., 697 N.E.2d 527, 530 (1998). The doctrine of spoliation permits sanctions only when a litigant or its expert negligently or intentionally loses or destroys evidence that the litigant (or expert) knows or reasonably should know might be relevant to a possible action, even when the spoliation occurs before an action has been commenced. Kippenhan, 428 Mass. at 127 (1998). **The concept of spoliation ... does not include the fault-free loss or destruction of evidence**. Hussein v. Malden Hosp., 2001 WL 717196 at *4 (Mass. Super. Mar. 16, 2001) citing Kippenhan 428 Mass. at 127. Further, the spoliation doctrine does not apply where the opposing party is not responsible for the loss or destruction of the evidence. Townsend, 174 F.R.D. at 5. Although a litigant generally has a duty to preserve evidence in a case, "that duty does not extend to

11

evidence which is not in the litigant's possession or custody and over which the litigant has no control." Hofer v. Gap, Inc., 516 F.Supp.2d 161, 170-71 (D.Mass. 2007) (citing Townsend, 174 F.R.D. at 5).

In this case, the routine deletion of Dr. Schaefer's email correspondence was fault-free and thus, does not amount to spoliation. Plaintiff has failed to produce *any* evidence that Dr. Schaefer intentionally destroyed or lost the email correspondence Plaintiff sought. As Dr. Schaefer states in his Affidavit, it is his custom and practice to review his BHD email address on a daily basis, deleting emails accordingly. See **Exhibit A**. He then "permanently deletes" his "Deleted" emails on a weekly basis. Id. It is also Dr. Schaefer's custom and practice is to review his emails from his Tufts email address on a weekly basis and delete emails accordingly. Id. Then, he "permanently deletes" his "Deleted" emails on a monthly basis. Id. To the extent that Dr. Schaefer reviewed and deleted email correspondence relevant to Mr. Ward, it was pursuant to his custom and practice, and *not* with any intent to purposely delete any and all emails that may be harmful to him. Further, a diligent search was conducted for any and all email correspondence between Dr. Schaefer and the many individuals listed in plaintiff's discovery requests and subpoenas. See **Exhibit A**; see also **Exhibit C**. Despite these efforts, these documents were unable to be located by Dr. Schaefer because they had been deleted pursuant to Dr. Schaefer's above-noted practice. See **Exhibit A**. Documents dating back to 2016 were, however, retrieved and produced to Plaintiff by BHD and Tufts University, which have the IT capacity to retrieve deleted email data.

Furthermore, once Dr. Schaefer "permanently deleted" his email correspondence from his email accounts at both Tufts and BHD, those emails are no longer within his

12

custody or control and are subject to the retention policies of these institutions. The maintenance of these emails is subject to either BHD or Tufts' email retention policies as it is the institution's choice how far back they maintain email correspondence documentation on their system. To date, the plaintiff has received retrieved email correspondence dating back to 2016 pursuant to their supboenas. The plaintiff has not obtained nor produced the email retention policies of either BHD or Tufts, which would determine when Dr. Schaefer's "permanently deleted" email correspondence was removed from their server.

### C. The Plaintiff has not been Prejudiced by Dr. Schaefer's Routine Deletion of his Email Correspondence.

Dr. Schaefer's routine deletion of his email correspondence is not spoliation of evidence because Plaintiff has not been prejudiced by its disposal. "[Spoliation] is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results." Keene v. Brigham and Women's Hosp., Inc., 439 Mass. 233, 234 (2003). In the case at hand, Dr. Schaefer's inability to produce email correspondence is not prejudicial to Plaintiff because: 1) Plaintiff maintained and has produced over 2,000 pages of email correspondence, including correspondence regarding all relevant meetings between Mr. Ward and Dr. Schaefer; 2) Plaintiff received over 1,500 additional emails that were retrieved from the BHD server; and 3) Plaintiff received an additional 71 pages of email correspondence from Tufts that were retrieved from their system.

13

Significantly more is required of Plaintiff in this case to determine whether an instruction for spoliation is warranted. In Booker, the plaintiff called two witnesses about their deletion of email correspondence concerning the plaintiff. 612 F.3d at 45. The first witness testified that he regularly deleted all of the emails in his "sent" and "deleted" email folders every 30 days and did not do anything in particular to preserve emails concerning the plaintiff. Id. The second witness testified that he received a copy of the plaintiff's letter of complaint and made no effort to preserve his emails concerning the plaintiff. Id. The Court held that a spoliation instruction was *not* warranted because there was no evidence that these witnesses' emails were relevant to her claims or that the defendants knew of their potential relevance. Id. at 47. The plaintiff was entitled to cross-examine the witnesses about their deletion of emails, the content of deleted emails or about whether the emails were relevant, but an instruction was not warranted without a greater showing. Id.

Plaintiff speculates that Dr. Schaefer's email correspondence is likely to include evidence of Dr. Schaefer's alleged misrepresentations to Mr. Ward regarding ACP-501, financial ties to the prior corporate defendants, AlphaCore Pharma and AstraZeneca, and collusion between Dr. Schaefer and Dr. Remaley, Dr. Shamburek and Bruce Auerbach. Plaintiff has failed, however, to provide any documentation or to elicit any testimony that Dr. Schaefer sent or received emails apart from those already in the custody of Plaintiff and those retrieved and produced by BHD and Tufts. Instead, Plaintiff is speculating that there are additional emails which support his allegations in the case.

Contrary to the case at hand, the Courts have ordered sanctions for spoliation when one party has had an opportunity to examine and analyze the evidence, and the

14

evidence is then disposed of before the other party has had an opportunity to do same. See Bolton v. Massachusetts Bay Transp. Auth., 32 Mass.App.Ct. 654 (1992) (defendant's expert prohibited from testifying about condition of bus involved in accident after the bus was disposed of after defense expert examined it but prior to plaintiff's expert examining the bus); Gath v. M/A-COM, Inc., 440 Mass. 482 (2003) (in negligence action resulting from plaintiff being hit by defective fence, an agent of the defendant disposed of the fence after he had a chance to examine it but prior to the plaintiff's expert's examination and the court prohibited the defendant from discussing the condition of the fence). In this case, the playing field is level, because both parties have been able to view the extensive email correspondence provided to date, and neither party has had an opportunity to review any of Dr. Schaefer's previously deleted email communication.

Finally, Plaintiff never requested the email correspondence he now claims is directly relevant to his allegations against Dr. Schaefer until January 2018. Plaintiff had ample opportunity to send a subpoena directly to BHD and to Tufts beginning in July 2016 when this case was first filed. The plaintiff could have served those subpoenas at any time between July 2016 and September 2018, when he only served subpoenas at the suggestion of Defense counsel followed by instruction of this Court. Plaintiff cannot claim that Dr. Schaefer must be sanctioned for spoliation of evidence where the evidence at issue was not requested for over two years, either formally or informally, after litigation was commenced.

## CONCLUSION

WHEREFORE, the Defendant respectfully requests that the plaintiff's Supplemental Memorandum in Support of Second Motion to Compel be DENIED.

Respectfully submitted by,
Defendant, ERNST J. SCHAEFER, M.D.,
By his attorney,

/s/ Ellen Epstein Cohen
Ellen Epstein Cohen, BBO #543136
Adler | Cohen | Harvey | Wakeman | Guekguezian, LLP
75 Federal Street, 10th Floor
Boston, MA 02110
(617) 423-6674
ecohen@adlercohen.com

Respectfully submitted by,
Defendant, ERNST J. SCHAEFER, M.D.,
By his attorney,

/s/ Sarah A. Doucett
Sarah A. Doucett, BBO #693659
Adler | Cohen | Harvey | Wakeman | Guekguezian, LLP
75 Federal Street, 10th Floor
Boston, MA 02110
(617) 423-6674
sdoucett@adlercohen.com

## CERTIFICATE OF SERVICE

I, Ellen Epstein Cohen, hereby certify that on November 21, 2018, this document was filed with the ECF system to be electronically served upon all registered participants as identified on the Notice of Electronic Filing.

/s/ Ellen Epstein Cohen
Ellen Epstein Cohen

## CERTIFICATE OF SERVICE

I, Sarah A. Doucett, hereby certify that on November 21, 2018, this document was filed with the ECF system to be electronically served upon all registered participants as identified on the Notice of Electronic Filing.

/s/ Sarah A. Doucett
Sarah A. Doucett